HALL (LYNN v.). See Case No. 8,641.

## Case No. 5,940.
### HALL v. NASHVILLE & C. R. CO.
[3 Am. Law T. Rep. U. S. Cts. 79.]

Circuit Court, E. D. Tennessee. April, 1870.

INSURANCE—COMMON CARRIER—TO WHAT EXTENT INSURANCE COMPANIES ARE SUBROGATED TO RIGHTS OF THE INSURED — NEGLIGENCE— DELIVERY.

1. Delivery is completed when there is nothing left to be done to finish the transportation.

2. Common carriers and insurance companies are alike insurers, and the former may be held responsible to the latter for loss occasioned by negligence.

3. Both the carrier and the insurance company are responsible to the owner or consignee, and, in case of ·loss, the owner or consignee may elect against which he will proceed.

4. If he recover of the insurance company, and the company seeks to indemnify itself by proceeding against the carrier, it must show negligence in order to recover.

This was an action brought by the plaintiffs to recover the value of forty-one bales of cotton, part of two hundred and fifty-five bales shipped from Macon, Georgia, destined for Louisville, Ky. The cotton was the property of Rogers, Garrett & Co., and shipped by them from Macon to care of the agent of the Louisville and Nashville Railroad at Nashville, and ultimately consigned to Hall & Long, factors at Louisville, Ky. The Macon and Western Railroad executed their receipts for the cotton, and recited that the cotton was marked "R. G. & Co., and shipped care of agent Louisville and Nashville Railroad Company, Nashville, Tennessee. Messrs. Rogers, Garrett & Co. notified Hall & Long of the consignment of the cotton to them, and instructed them to insure, which they did. The policy was an open one, effected by Hall & Long with the Kentucky Marine and Fire Insurance Company of Louisville, Ky. It did not appear from the proof in whose name the policy was taken, but it did appear that Hall & Long received the insurance upon the lost cotton from the insurance company and paid it over to Rogers, Garrett & Co., the owners. The two hundred and fourteen bales not destroyed passed

through Hall & Long's house. It further appeared from proof that Rogers, Garrett & Co., in their letter notifying Hall & Long of the consignment of the cotton to them, instructed them to sell at fifty-five cents or to ship to New York, and to insure the cotton from place of shipment to destination. No bill of lading was given, or none was in proof, and no receipt other than the one above described. A pencil memorandum of the manifest was in proof, which showed marks "R. G. & Co., to Ag't of L. & N. R. R. Co., Nashville," number of cars, &c. The cotton was shipped from Macon in October, 1865, was delivered to the Western and Atlantic Railroad, at Atlanta, Ga. The cotton reached Chattanooga on the night of the 24th of October, and was run in open flat cars into the Western and Atlantic Railroad yard. On the morning of the 25th, at about 9 o'clock it was run out on the Y by an engine of the Western and Atlantic Railroad. The Y was built and owned by the Nashville and Chattanooga Railroad, and was the place where freights were delivered by both roads. It was the custom, after cars were run on the Y, for the road receiving the goods to take the cars with their engine to the transfer platform, where the goods, in the presence of transfer clerks, were checked and transferred to their cars. About three hours after the cotton was run on the Y by the Western and Atlantic Railroad engine, a train of cars of the Nashville and Chattanooga Railroad ran by the cotton while the engine, with open stack and throttle, was exhausting and working heavily. Proof was that it was customary for engines, in running by cotton on open cars, to shut off steam, as it was hazardous to run by with steam on and with open stacked engines. About fifteen minutes after the Nashville and Chattanooga Railroad train passed, the cotton was found to be on fire, burning rapidly. The hands of the Nashville and Chattanooga Railroad separated the cars and extinguished the fire, but not until the greater part of forty-one bales was destroyed. The injured cotton was taken possession of by the agent of the Nashville and Chattanooga Railroad, and sold by him. The freight on the burnt cotton was paid by the Nashville and Chattanooga Railroad. These are substantially the facts of the case.

The declaration contained three counts. The first and second counts alleged a delivery to the Nashville and Chattanooga Railroad, and failure to transport safely to Nashville. The third count alleged that the Nashville and Chattanooga Railroad, while the cotton on open cars was standing on the Y, carelessly ran a heavy train of cars near by, and set fire to the cotton with sparks from their engine, through which gross negligence the cotton was destroyed.

TRIGG, District Judge (charging jury). This is an action which it is very important

you should decide correctly. It is an important case—important to the defendant as measuring the liability which the law imposes upon railroads as common carriers, and important to the public as fixing their rights as shippers. The law imposes upon railroads as common carriers great responsibilities. They have great privileges, as you well know, and in consideration of such privileges the law holds them to a strict account for all property delivered to their care. They are excused from accounting for the property injured or destroyed by the act of God, or by public enemies; but the law does not excuse them from liability for any other cause. While transporting goods they may be overcome by a superior force of robbers or plunderers, and the goods be taken from them, but that will not excuse them. It may seem hard to you that they should be held to such strict accountability, but that is law.

In this case the plaintiff claims a recovery from the defendant upon two grounds. In the first and second counts of the declaration it is alleged that the cotton which was destroyed was delivered to the defendant, and was then destroyed by the carelessness and negligence of the defendant. And, second, that it was delivered, but was not safely transported to Nashville, as the defendant was bound to do. Now, in both counts, a delivery of the goods is alleged to have been made to the defendant, and you must therefore be satisfied from the proof that such delivery was made, or else you can not hold it responsible. It is for you, gentlemen of the jury, to determine what these facts are that tend to show a delivery; but what it takes to constitute a delivery is a question of law which the court must determine. In order to constitute a delivery in this case, it must appear that the Western and Atlantic Railroad did everything that was necessary on its part to complete the transportation of the cotton in question. What these two roads considered a delivery of freights from one to the other, you may determine in two ways. To make a delivery upon the Y, you must be satisfied that there was a special contract or agreement to that effect. No attempt has been made here by the plaintiffs to prove any such contract, and you therefore cannot conclude that there was any such agreement to that effect. But you may find, if the facts warrant it, that an agreement, founded upon custom and usage, existed, by which the delivery of goods upon the Y was treated by both roads as a delivery. You may infer this from circumstances. If it appears to you that the Y, upon which the cars were run, was owned and constructed by the N. & C. R. R. for their convenience, and for the convenience of the other roads, and that it was the custom of the two roads, when freight was to be delivered by one to the other, to place the cars containing it on this Y; this would be a circumstance to show

that there was an understanding that a delivery there was a delivery into the possession and control of the road which was to receive it. It may often happen that some such a place for running cars is agreed upon by connecting roads for the convenience of all parties; for it frequently occurs that when the one is ready to deliver, the other may not be ready to receive, and vice versa. Now, under such circumstances it may, and perhaps often does happen, that common carriers agree upon some place where cars shall be delivered, until it is convenient for them to unload them. If it shall appear from the proof that when cars were thus left in the Y, it was the custom for the road receiving them to run those cars with their own engine to their transfer platform, and there with their own hands and clerks, to unload the cars and check and transfer the goods, that would be a strong circumstance tending to show that the placing of the cars on the Y was by usage and custom considered a delivery, and an agreement to that effect might be inferred. If it shall appear to you, gentlemen, that when the road to deliver goods was in the habit of running cars down on the Y, and that when they were left there that the delivering road did nothing more in the way of moving the cars, or handling the freights, that would be a circumstance from which not only to infer an agreement, but also tending to show that a delivery on the Y was considered a complete delivery. The unlocking of cars and counting of packages were minor things. They were observed to protect the company receiving freights, from loss, etc. It did not effect the delivery, for of course no goods were delivered except such as were contained in the cars. It could hardly be said that, because some parcels were missing, there was no delivery at all. The delivery was good only as to the goods actually in the car. The delivery was complete when there was nothing left to do to finish the transportation. The unlocking of cars and checking on the books were minor acts which did not effect the delivery. Now, if there was a delivery, and the cotton was destroyed while it was in the defendant's possession, the plaintiffs are entitled to recover on the first and second counts, unless the defendants show it was destroyed by the act of God, or the public enemy—which is not claimed. If you are satisfied, gentlemen of the jury, that there was no delivery, but that while the cotton was standing on the Y the defendant run its cars and engines by it in such a careless manner that the cotton was set on fire and destroyed, then the plaintiffs would be entitled to recover. But before you can find for the plaintiffs you must be satisfied that the defendant was guilty of negligence in running its engine by the cotton, and again, that the cotton took fire and was destroyed from the sparks which flew from the defendant's engine. If it took fire the day before, or at any time, from the care-

lessness of the Western and Atlantic Railroad, either from its engine, or because it run the cotton out on the Y, and concealed it by cars, and failed to give the defendant notice that the cotton was there, so it might be on its guard, then, of course, you could not find for the plaintiffs.

As to the legal questions raised by the counsel for the defendant upon the right of the plaintiffs to maintain this action, I have had, I confess, serious doubts. I have given the subject, however, all the care and investigation I could, and will give the conclusions to which I have arrived. It is a well settled principle of law that a consignee of goods is prima facie the owner, and can maintain an action for any damage done to them while in his possession, or while in transit. He is by law considered the owner of the goods, and could protect them. He could, even if not the owner, sue for damage done to the property while in possession or in transit, but the recovery would be for his benefit only to the extent of his interest. If the recovery exceeded his interest, he would hold the balance in trust for the owner of the goods. But the consignee is not the only one who could sue. The owner of the goods has a right of action for damages done to his goods while in transit. He can maintain an action therefor as well as the consignee. It is also well settled in law, that an insurance company is subrogated to the rights of the insured. But the insurance company when so subrogated can not always recover where the insured might recover. For example: common carriers are carriers and insurers both. They are insurers against every loss but such as result from the act of God or the public enemies. They are responsible for every loss resulting from their own negligence. They are in law, liable to shippers for losses resulting from every cause save the acts of God or public enemies, whether such loss result from their negligence or not. But I do not think an insurance company, in such a case as this, can recover from a common carrier for any losses, except those resulting from the negligence of the carrier. That is, a plaintiff—a consignor or consignee—who sues for the use of an insurance company, cannot recover from a common carrier unless the damage complained of resulted from the negligence of the carrier. They are both insurers. If the insurance company could be subrogated to all the rights of the owner, and recover of the carrier for all losses, whether arising from negligence or otherwise, then the former would really be no insurer at all, or rather would incur no risk as such, except the mere insolvency of the carrier. For it would only have to pay the losses to the assured, if called upon, and then at once recover them back from the carrier. What does the insurance company insure against, if it has such remedies? The carrier should be responsible to insurers for losses resulting from negligence,

for that is something against which it can guard; but for other losses not arising from negligence, one insurer cannot recover of another. Such a proposition, in my judgment, is not in accordance with the principles of common justice, and ought not to be recognized. The carrier and the insurance company are both insurers for the safe delivery of the goods, and in the event of their loss or destruction, without any fault or negligence on the part of the carrier, I cannot see upon what fair principle of right it is that the carrier shall be the only sufferer. Both the carrier and the insurance company are paid for the risk which they take, and, in case of loss, the party assured may look to either for indemnity. If the carrier exercise proper care and diligence in respect to the goods in his charge, and the same should, without any fault or negligence on the part of the carrier, be injured or destroyed, why should the carrier be regarded in any light different from the insurance company. The carrier has done no wrong, and the injury to the property results from circumstances over which he had no control and could not have provided against. The carrier, in such case, is as innocent of wrong as the insurance company, and in equity and good conscience they should both stand upon an equal footing. In case of loss under such circumstances both would be liable to the owner for indemnity, the carrier upon his undertaking as such, and the insurer upon his special contract for indemnity. The owner of the goods lost may make his election, and assert his right to indemnity against either. And after the election is made, and the insurance company pays up the losses, I am at a loss to perceive upon what principle of equity it is that the insurance company can claim to be reimbursed by the carrier, who is as blameless in respect to the injury as the insurance company. They are both paid for the risk they take, and where the one is not more at fault than the other, I cannot see how, in equity, the carrier should be required to reimburse the insurer any more than the insurer should be required to reimburse the carrier.

If, therefore, the jury is satisfied from the evidence that the cotton in dispute was burned by the carelessness and negligence of the defendant, they should find for the plaintiffs; but if they shall be satisfied that the loss was occasioned, not by any negligence on the part of the defendant or its agents, they must return their verdict in favor of the defendant. The plaintiffs in this case can maintain this action for the use of the insurance company, to the extent of their interest, and to that extent can recover of the defendant, if this loss was the result of negligence on the part of the defendant, but they can recover no more. It does not appear what the extent of that interest is. There is nothing in the proof from which you can determine this fact, and I am therefore com-

pelled to decide that the plaintiffs, under the circumstances, and upon the proof, cannot maintain this action, and you must therefore find for the defendant.

The plaintiffs, before the jury returned their verdict, in view of the charge of the court and the facts developed by the trial, took a non-suit.